UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LUSITANIA GREGORIO, | ) | CIVIL ACTION NO. 4:22-CV-129 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

Plaintiff Lusitania Gregorio, an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED and this case will be remanded for further proceedings.

## II.   BACKGROUND & PROCEDURAL HISTORY

On April 30, 2020, Plaintiff filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 21; Doc. 8-2, p. 22). In this application, Plaintiff alleged she became disabled on September 1, 2016, when she was forty-six years old, due to the following conditions: diabetes, fibromyalgia, muscle spasms, nerve pain, cholesterol, 2 herniated disc on neck which is pinching on her neck, back pain, pain in both shoulders, numbness and tingling sensation on both hands, constant headaches, tendonitis in elbow, depression, neuropathy in elbow, and anxiety. (Admin. Tr. 33; Doc. 8-6, p. 7). Plaintiff alleges that these conditions affect her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and use her hands. (Admin. Tr. 348; Doc. 8-6, p. 21). Plaintiff also alleges these conditions affect her memory. *Id.* Plaintiff has a high school education and is unable to communicate in English. (Admin. Tr. 332, 334; Doc. 8-6, pp. 5, 7). Before the onset of her impairments, Plaintiff worked as a stock cutter, a "laborer stores," and poultry eviscerator. (Admin. Tr. 31; Doc. 8-2, p. 32).

On August 28, 2020, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 21; Doc. 8-2, p. 22). On November 12, 2020, Plaintiff's application was denied on reconsideration. *Id.* On November 17, 2020, Plaintiff requested an administrative hearing. *Id.*

Page 2 of 27

On March 10, 2021, Plaintiff, assisted by her counsel and a Spanish interpreter, appeared by telephone at an initial administrative hearing before Administrative Law Judge Gwendolyn Hoover (the "ALJ"). *Id.*[1] On June 23, 2021, a second hearing was held. *Id.* Plaintiff appeared and testified by telephone with the assistance of her counsel and a Spanish interpreter before the same ALJ. On July 9, 2021, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 33; Doc. 8-2, p. 34). On July 14, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 300; Doc. 8-4, p. 142).

On December 10, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 8-2, p. 2).

On January 25, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). Along with her complaint, Plaintiff submitted documents that were submitted to and rejected by the ALJ before her decision was issued. (Doc. 1, ¶ 10); (Docs. 1-1, 1-2, 1-3, and 1-4).[2] These records were not included in the administrative record. *Id.* In

---

[1] On the date of Plaintiff's hearing in this case, Plaintiff had an appeal of an earlier application for benefits pending before this Court. *Gregorio v. Saul*, No. 1:20-CV-608-MCC (M.D. Pa.). On September 16, 2021, judgment was issued in the Commissioner's favor in that case. Judgment, *Gregorio v. Saul*, No. 1:20-CV-608-MCC (M.D. Pa. Sept. 16, 2021), ECF No. 23.

[2] Plaintiff attached a second copy of these records to her brief in support.

the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence. (Doc. 1, ¶ 39). As relief, Plaintiff requests that the court reverse the final decision denying Plaintiff's application and enter an order awarding benefits. (Doc. 1, p. 9).

On March 31, 2022, the Commissioner filed an answer. (Doc. 7). In the answer, the Commissioner maintains that the decision denying Plaintiff's application is correct and is supported by substantial evidence. (Doc. 7, ¶ 12). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 8).

Plaintiff's Brief (Doc. 13) and the Commissioner's Brief (Doc. 18) have been filed.  Plaintiff did not file a reply. This matter is now ready to decide.

## III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or

---

[3] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole."[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC v. Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S.

---

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; *see, e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

In doing so, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

---

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

The ALJ's decision must also meet the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

### B. STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act,

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

[14] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[16] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[17]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[18] In making this assessment, the ALJ considers

---

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

[16] 20 C.F.R. § 416.920(a).

[17] 20 C.F.R. § 416.920(a)(4).

[18] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[19]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[20]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[21]

### C.    APPLICATION OF THE FIVE-DAY RULE FOR SUBMITTING WRITTEN EVIDENCE

Social security regulations require that a claimant submit or inform the Social Security Administration about all evidence known to him or her that relates to whether or not he or she is disabled.[22]

Effective January 17, 2017, the Social Security Administration amended their regulations governing the submission of evidence. The amended regulation is

---

[19] 20 C.F.R. § 416.945(a)(2).

[20] 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[21] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

[22] SSR 17-4p, 2017 WL 4736894, at *3 (citing 20 C.F.R. § 416.912(a)(1)).

intended to reduce the need for post-hearing proceedings and help the Social Security Administration provide more timely service to all claimants.[23] It provides:

> (a)  When you submit your request for hearing, you should also submit information or evidence as required by § 416.912 or any summary of the evidence to the administrative law judge. Each party must make every effort to ensure that the administrative law judge receives all of the evidence and <u>must inform us about or submit any written evidence, as required in § 416.912, no later than 5 business days before the date of the scheduled hearing</u>. If you do not comply with this requirement, the administrative law judge <u>may</u> decline to consider or obtain the evidence unless the circumstances described in paragraph (b) of this section apply.[24]

If a claimant misses the deadline, the ALJ is required to accept the evidence under the following limited circumstances:

> (1)  Our action misled you;

> (2)  You had a physical, mental, educational, or linguistic limitation(s) that prevented you from informing us about or submitting the evidence earlier; or

> (3)  Some other unusual, unexpected, or unavoidable circumstance beyond your control prevented you from informing us about or submitting the evidence earlier. Examples include, but are not limited to:

>> (i)  You were seriously ill, and your illness prevented you from contacting us in person, in writing, or through a friend, relative, or other person;

---

[23] NPRM, 81 FR 90987, 90990 (Dec. 16, 2016).

[24] 20 C.F.R. § 416.1435(a) (emphasis added); *see also* SSR 17-4p, 2017 WL 4736894, at *3-4.

(ii)     There was a death or serious illness in your immediate family;

(iii)    Important records were destroyed or damaged by fire or other accidental cause; or

(iv)     You actively and diligently sought evidence from a source and the evidence was not received or was received less than 5 business days prior to the hearing.[25]

These exceptions are intended to "take into account for the needs of individuals who, due to their unique circumstances, do not fully understand or are not capable of adhering to [the Social Security Administration's] requirements or requests."[26] An incorrect application of the 5-day rule requires remand where the evidence the ALJ did not consider is more favorable to the claimant than evidence relied on in the ALJ's decision.[27]

## IV.   DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)     "Whether the Administrative Law Judge erred and abused her discretion by failing to consider the limitations in Plaintiff's residual functional capacity from her fibromyalgia, degenerative disc disease of the cervical and lumbar spine, radiculopathy, left shoulder strain/classification, tendonitis/ulnar neuropathy of the right elbow, depression and anxiety, all of which were

---

[25] 20 C.F.R. § 416.1435; *see also* SSR 17-4p, 2017 WL 4736894.

[26] NPRM, 81 FR 90987, 90990 (Dec. 16, 2016).

[27] *DeGraff v. Comm'r of Soc. Sec.*, 850 F. App'x 130 (2d Cir. 2021).

determined by the Administrative Law Judge to be severe impairments," (Doc. 13, p. 1);

(2) "Whether the Administrative Law Judge erred and abused her discretion in failing to consider the limitations in Plaintiff's residual functional capacity with regards to her migraine headaches, gastritis, kidney stones, bilateral shoulder and hand pain, neuropathy in her hands and feet, and insomnia, which were either not referenced at all by the Administrative Law Judge in her decision or were considered to be non-severe, despite causing more than a minimal limitation regarding Plaintiff's activities of daily living," (Doc. 13, p. 1-2);

(3) "Whether the Administrative Law Judge erred and abused her discretion by failing to consider relevant records that were submitted by Plaintiff's counsel prior to the decision from the Administrative Law Judge, including a comprehensive Functional Capacity Evaluation," (Doc. 13, p. 2); and

(4) "Whether the Administrative Law Judge erred and abused her discretion in setting forth [her] determination of Plaintiff's residual functional capacity in light of the opinions regarding Plaintiff's limitation from Consultative Exam Physician, Rose M. O'Brien, despite the Administrative Law Judge giving weight to some of Ms. O'Brien's opinions," (Doc. 13, p. 2).

We will begin our analysis by summarizing the ALJ's findings. Then, we will discuss Plaintiff's third argument, relating to the ALJ's decision not to consider an FCE she was not informed about that was submitted six days after the administrative hearing. We find that remand is appropriate because the ALJ did not adequately explain why no exception from 20 C.F.R. § 416.1435(b) applied to the FCE. Therefore, we will not address Plaintiff's remaining arguments. If any further error exists, it can be addressed on remand.

Page 12 of 27

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her July 2021 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between April 30, 2020 (Plaintiff's application date) and July 9, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 24; Doc. 8-2, p. 25).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: fibromyalgia, degenerative disc disease of the cervical and lumbar spine, radiculopathy, left shoulder strain/calcification, tendinitis/ulnar neuropathy right elbow, depression, and anxiety. *Id*. The ALJ also identified the following impairments as medically determinable but non-severe: diabetes mellitus, hyperlipidemia, headaches, COVID-19 infection, vitamin B12 deficiency, overweight, gastritis, mild stress incontinence, and kidney stone. *Id.* Plaintiff's alleged history of liver cancer was not medically determinable. *Id.*

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 25; Doc. 8-2, p. 26).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) except that she could:

> occasionally climb ramps/stairs, balance, stoop, kneel, crouch and crawl, never climb ladders[,] ropes, scaffolds, occasional pushing/pulling and reaching overhead bilaterally, frequent handling, fingering, and feeling bilaterally, avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and hazards (machinery and heights, etc.), capable of performing simple, routine tasks and making simple decisions, and can tolerate occasional changes in work setting.

(Admin. Tr. 26; Doc. 8-2, p. 27).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 31; Doc. 8-2, p. 32).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 32; Doc. 8-2, pp. 33). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: cleaner (housekeeping), DOT #323.687-014; assembler (electrical accessories), DOT #729.687-010); and marker, DOT #209.587-034. *Id.*

**B.    REMAND IS REQUIRED BECAUSE THE ALJ DID NOT EXPLAIN WHY NO EXCEPTION TO THE FIVE-DAY RULE APPLIED**

On February 25, 2021, Plaintiff's representative sent a letter to the ALJ to inform her that additional evidence was requested from Lancaster General Physical Therapy and several other providers but had not been received. (Admin. Tr. 394; Doc. 8-6, p. 67).

On March 10, 2021, the first administrative hearing was held by telephone. A Spanish language interpreter was required because Plaintiff does not speak English. Plaintiff's counsel and the ALJ had the following discussion about that evidence:

ALJ:     . . .  What is the status of the records—go ahead.

ATTY:  We are—

ALJ:     I—

ATTY:  —still—

ALJ:     Go ahead.

ATTY:  We are still waiting for the Pennsylvania Counseling Service's records referenced in 14E. On 15E, we are no longer—well, let me rephrase that. My understanding is, on 16E, her therapist and psychiatrist are not filling out the mental assessment.

INT:      Okay. For accuracy, can you repeat again?

ATTY:  On 16E, it is my understanding that neither her therapist nor her psychiatrist are doing the mental assessment. For the physical assessment, she is still being referred for a functional capacity evaluation, which has not yet been scheduled. As you can –as—I—as you can see from 15E, they did refer her

> to physical therapy, but they have to still do the assessment, the functional capacity assessment. So other than item 3 on 16E, we're still waiting on that document.

ALJ:    Ordinarily, I would not leave the record open to acquire future evidence.

INT:    Okay, to allow—

ALJ:    For receipt—to allow for receipt, but I am not going to leave the record open indefinitely. So, at the close of the 30 calendar days, I will consider all the evidence that has been submitted at that time.

(Admin. Tr. 59-60; Doc. 8-2, pp. 60-61).

On April 13, 2021, Plaintiff requested that the record be held open for an additional 14 days because the records from Lancaster Physical Therapy had not been received. (Admin. Tr. 396; Doc. 8-6, p. 69).

On April 23, 2021, the Social Security Administration sent a notice of a second hearing, scheduled to take place on June 23, 2021, because neither Plaintiff nor the vocational expert were sworn in during the first hearing. (Admin. Tr. 259; Doc. 8-4, p. 103); (Admin. Tr. 43; Doc. 8-2, p. 44).

On June 10, 2021, Plaintiff had a functional capacity evaluation ("FCE"). (Doc. 13-1, pp. 248-308). Following that examination, the evaluator concluded in his 31- page report that Plaintiff's abilities would place her at or below the sedentary workload category and that she would likely be unable to tolerate a full 8-hour

workday due to increasing levels of pain and fatigue during the two-hour evaluation. (Doc. 13-1, p. 252).

On June 15, 2021, Plaintiff's counsel sent a 5-day letter to inform the ALJ that urology records had been requested but not received. (Admin. Tr. 397; Doc. 8-6, p. 70). At the time this letter was sent, counsel was not aware that the FCE had taken place.

On June 23, 2021, the second administrative hearing was held via telephone. A Spanish language interpreter was required because Plaintiff does not speak English. During that hearing, Plaintiff's counsel and the ALJ had the following discussion regarding outstanding evidence:

ALJ:     . . . just to—to be clear, I received an additional notice regarding outstanding evidence—

ATTY:    Yes.

ALJ:     --in a letter dated June 15th of 2021.

ATTY:    Okay, Your Honor—

ALJ:     And I'm sorry—oh, I'm sorry, Ms.—Ms. Lorna, can you interpret, please? Or do I need to repeat?

INT:     Okay—yes, can you please repeat the thing you were saying about the letter, please?

ALJ      Okay. . . . I received a correspondence on—I'm sorry, on—on June 15th of 2021 regarding outstanding evidence from Keystone Urology Specialists. What is the status of that evidence?

ATTY:   I believe—when I spoke with my paralegal before this hearing, I believe she indicated that the Keystone records have been submitted.

INT:    Okay, excuse the interpreter, I'm really sorry, but that was a little too fast for me and I was not able to understand it. I'm really sorry.

ATTY:   That's okay. I—I picked up the phone now. I believe that the—when I spoke with my paralegal before this hearing, she confirmed that the Keystone records have been submitted. That is the urologist.

ALJ:    So as I understand it, the record may now be closed, correct?

ATTY:   Yes. Okay.

(Admin. Tr. 49-50; Doc. 8-2, pp. 50-51).

In the brief, Plaintiff's counsel argues that he did not know about the FCE before the 11:30 a.m. hearing.

The records submitted with Plaintiff's brief include a June 23, 2021, letter from Plaintiff's counsel's office to the provider requesting "[a]ll records and reports from 01/01/2020-present, including Functional Capacity Evaluation." (Doc. 13-1, p. 3). The letter also requests that the request be expedited because Plaintiff "has a Social Security hearing scheduled June 23, 2021." *Id.* The enclosed fax cover page suggests that the letter was transmitted on June 24, 2021 at 2:46 p.m. (Doc. 13-1, p. 2).

Six days later, on June 29, 2021, Plaintiff's counsel received 366 pages of medical records. (Doc. 13-1, p. 1). It was provided to the Social Security Administration that same day. (Admin. Tr. 22; Doc. 8-2, p. 23) (noting that the records were submitted to the electronic folder on June 29, 2021). That submission included two copies of the 31-page FCE. (Doc. 13-1, pp. 248-308, 311-371).

On July 9, 2021, 16 days after the hearing and 10 days after the evidence was submitted to the electronic folder, the ALJ issued her decision. In that decision, she correctly explained that a claimant must generally inform the ALJ about or provide all evidence five days before the hearing. She also correctly summarized the exceptions to that rule. The ALJ then addressed the post-hearing evidence as follows:

> The claimant submitted or informed the Administrative Law Judge about additional written evidence less than five business days before the scheduled hearing date. I decline to admit this evidence because the requirements of 20 CFR 416.1435(b) are not met. Records from Lancaster General Health Physical Therapy were submitted to the electronic folder on June 29, 2021. At the June 23, 2021, hearing the representative advised that the records noted in the 5-day letter (Exhibit C18E) were submitted from Keystone Urology (and were exhibited at C22F), and that the record was complete. The record was not held open for additional evidence. The additional record submitted on June 29, 2021, contains duplicate records of the claimant's physical therapy sessions as already found at Exhibits C18F and C20F. However, it also contains a functional capacity evaluation performed on June 10, 2021. Given it was performed well over five days prior to the June 23, 2021, hearing, I find that none of the above requirements of 20 CFR 416.1435(b) are met specific to this additional post-hearing record.

(Admin. Tr. 22; Doc. 8-2, p. 23).

Plaintiff argues that the ALJ improperly excluded the FCE. In support of her position, she asserts that an exception to 20 C.F.R. § 416.1435(a) applies because of Plaintiff's linguistic limitations. Plaintiff argues that because an interpreter is required to communicate with her counsel, there was a communication delay, and her counsel was not aware that the FCE had been scheduled and had taken place at the time of the hearing. The Commissioner does not dispute that a language barrier exists but argues that the language barrier did not prevent Plaintiff from informing her counsel, and the ALJ, of the existence of the FCE more than five days before the hearing. In support of her position, the Commissioner asserts:

> Plaintiff's failure to allege any communication problems with her attorney prior to the assertion to this court, the evidence that Plaintiff's attorney used his own interpreter to communicate with Plaintiff, and the fact that Plaintiff's attorney referred Plaintiff for the evaluation negates Plaintiff's ability to effectively argue a linguistic limitation to her benefit.

(Doc. 18, pp. 21-22).

In reviewing an ALJ's application of this 5-day deadline in social security appeals, courts have found that "[a] claimant's receipt of documents from a medical source less than five business days before a hearing is not by itself sufficient to establish unusual, unexpected, or unavoidable circumstances beyond the claimant's

control."[28] This Court has also held that, where counsel requested and anticipated that a medical evaluation would occur, counsel's failure to *inform* the ALJ until four days before the hearing was not sufficient to establish unusual, unexpected, or unavoidable circumstances beyond the claimant's control.[29] Remand is appropriate, however, where it is not apparent how the ALJ could have known that none of the circumstances in 20 C.F.R. § 416.1435(b) existed or where the ALJ fails to explain how he or she determined that none of those circumstances existed.[30]

In *Razey v. Comm'r of Soc. Sec.*, the claimant's counsel informed the ALJ during the administrative hearing that he recently learned about certain medical records and that they were "waiting on them" at the time of the hearing.[31] The ALJ did not question counsel about when the evidence was requested, or whether he encountered difficulty obtaining it.[32] The ALJ simply stated that it was beyond the

---

[28] *Shuey v. Berryhill*, No. 1:18-CV-626, 2019 WL 1303201 at *5 (M.D. Pa. Feb. 28, 2019) *report and recommendation adopted by* 2019 WL 1299272 (Mar. 21, 2019).

[29] *Guyer v. Saul*, No. 3:18-CV-1931, 2020 WL 497286, at *5 (M.D. Pa. Jan 15, 2020) *report and recommendation adopted by* 2020 WL 504658 (M.D. Pa. Jan. 30, 2020).

[30] *Razey v. Comm'r of Soc. Sec.*, No. 19-04-E, 2019 WL 4451082 (W.D. Pa. Sept. 17, 2019).

[31] 2019 WL 4451082, at *3-4.

[32] *Id.*

five-day period, so he would not allow it.[33] Nevertheless, the claimant's counsel

submitted the evidence on December 20, 2017.[34] The ALJ issued his decision on

January 29, 2018, and did not consider the late evidence.[35] In that decision, the ALJ

correctly explained the 5-day rule and noted its exceptions, but he did not analyze or

explain his analysis of why none of those exceptions applied.[36]

The ALJ in this case similarly did not adequately explain her decision to

exclude these records. Like in *Razey*, the ALJ in this case did not discuss or explain

why none of the circumstances set out in 20 C.F.R. § 416.1435(b) applied.

Furthermore, the ALJ was aware that Plaintiff had a linguistic limitation (i.e., she

does not speak English), and that she and her attorney used an interpreter to

communicate.[37] Therefore, we find that the failure to acknowledge Plaintiff's

---

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Compare Id., with Guyer*, 2020 WL 497286, at *5 (quoting the ALJ's rationale for excluding records, which included specific reasons and discussed counsel's advance knowledge of the functional capacity evaluation at issue).

[37] The Commissioner also argues that Plaintiff's counsel was the one who referred Plaintiff for the FCE and therefore should have had advanced knowledge that an exam would take place. (Doc. 18, p. 21). This argument is not persuasive, and is a post hoc rationalization to support an otherwise unexplained conclusion. "[I]t is well-established that an ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision." *Keiderling v. Astrue*, No. 07-2237, 2008 WL 2120154 at *3 (E.D. Pa. May 20, 2008). The ALJ did not discuss who referred Plaintiff for the FCE. Furthermore, the Commissioner's only citation to support her position is to a blank

linguistic limitation and explain the reasoning as to why the exception in 20 C.F.R.

§ 416.1435(b)(2) does not apply is an error.

Remand, however, is not required unless the failure to admit the FCE could

have affected the outcome in this case. The Commissioner argues that excluding the

FCE does not prejudice Plaintiff. Specifically, the Commissioner argues:

> [T]he report does not include information that, if excluded, would
> prejudice Plaintiff's case (Pl's Br., ECF No. 13-1, at 277-401). The
> evaluator, Megan Groft, DPT, acknowledged that she reviewed
> Plaintiff's medical history, subjective reports, and objective physical
> findings (Pl.'s Br., ECF No. 13-1, at 281), evidence that was already
> before and reviewed by the ALJ. The RFC is an administrative finding
> placed squarely in the hands of the ALJ. It is not for physicians or state
> agency consultants to make the RFC determination. See Chandler, 667
> F.3d at 361. Because the ALJ had the pertinent evidence before her
> when making the RFC assessment and is tasked with finding the RFC,
> the June 10, 2021, functional capacity assessment did not provide any
> additional information that if excluded, would prejudice Plaintiff's
> case.

(Doc. 18, p. 22). We agree that excluding the duplicative records is harmless error.

However, we are not persuaded that excluding the FCE from the record was

harmless.

---

hearing acknowledgment form. (Doc. 18, p. 21) (citing Admin. Tr. 281; Doc. 8-4, p.
123).

Three sources assessed Plaintiff's physical functional capacity in this case. Two state agency consultants (Dr. Park and Dr. Wilson), and one consultative examiner (CRNP O'Brien).

On August 27, 2020, during the initial review of Plaintiff's application, Dr. Wilson issued a statement about Plaintiff's physical abilities.[38] Dr. Wilson assessed that Plaintiff had abilities that are consistent with the performance of a range of "light" work. On November 10, 2020, at the reconsideration phase of review, Dr. Park conducted a similar assessment. Like Dr. Wilson, Dr. Park agreed that Plaintiff could perform a range of "light" work but included additional manipulative and environmental limitations. In the decision, the ALJ considered both of the prior administrative medical findings and found them "partially persuasive." In doing so, the ALJ explained:

> On August 27, 2020, Jennifer Wilson, DO, the State agency medical consultant, assessed the claimant's functional abilities: she can lift and carry twenty pounds occasionally and ten pounds frequently. She can stand and/or walk for six hours in an eight-hour workday. She can sit for six hours in an eight-hour workday. She has no limitation in her ability to push and pull other than indicated by her ability to lift and carry. She can climb ramps, stairs, ladders, ropes, or scaffolds occasionally. She can balance, stoop, kneel, crouch, and crawl occasionally. She has no manipulative, visual, communicative, or environmental limitations (Exhibit C3A). On November 10, 2020, Hong Park, MD, another State agency medical consultant, assessed the

---

[38] *See* 20 C.F.R. §§ 416.913(a)(5) (defining prior administrative medical finding); 416.913a (explaining how evidence from state agency consultants is considered).

claimant's functional abilities. He concurred with Dr. Wilson's findings as to the claimant's exertional and postural abilities. However, he found that the claimant has additional limitations with manipulative activities, as she should avoid sustained/repetitive overhead and handling, limited to frequently with either hand, and environmental limitations, as she should avoid concentrated exposure to extreme cold, wetness, humidity, vibration, and hazards (Exhibit C5A). These opinions are partially persuasive as to the claimant's ability to perform work within the light exertional level. While Dr. Park's opinion is more persuasive as to the claimant's additional manipulative and environmental limitations, the record as a whole indicates that the claimant is unable to climb ladders, ropes, or scaffolds given her left shoulder dysfunction and history of fibromyalgia. As State agency consultants, Dr. Wilson and Dr. Park reviewed the claimant's available treatment records prior to rendering their opinions, which they fully supported with objective findings of record, including her imaging studies, EMG findings, and physical examination findings (Exhibits C3A and C5A).

(Admin. Tr. 30-31; Doc. 8-2, pp. 31-32).

CRNP O'Brien examined Plaintiff. She assessed physical limitations more consistent with sedentary work. In the decision, the ALJ found that CRNP O'Brien's medical source statement was "somewhat persuasive." In doing so, the ALJ explained:

On August 13, 2020, Nurse O'Brien assessed the claimant's functional abilities: she can lift and carry ten pounds occasionally. She can sit for four hours at one time for a total of eight hours in a workday. She can stand for two hours at one time for a total of four hours in an eight-hour workday. She can walk for one hour at a time for a total of two hours in an eight-hour workday. She can reach, including overhead, push, and pull occasionally with either hand. She can handle, finger, and feel frequently with either hand. She can operate bilateral foot controls occasionally. She can never climb ladders or scaffolds. She can climb stairs and ramps, balance, stoop, kneel, crouch, and crawl occasionally. She is unable to tolerate exposure to unprotected heights. She can

tolerate occasional exposure to moving mechanical parts and operating a motor vehicle, frequent exposure to extreme cold, extreme heat, and vibrations, and continuous exposure to humidity, wetness, dust, odors, fumes, and pulmonary irritants. She is unable to walk a block at a reasonable pace on rough or uneven surfaces but with no other ambulatory limitations (Exhibit C9F). This opinion is somewhat persuasive as to the claimant's non-exertional limitations, specifically her abilities to perform manipulative and postural activities. As a consultative examiner Nurse O'Brien performed a full physical examination of the claimant and provided support for her assessment with clinical findings. However, her opinion as to the claimant's overall exertional abilities and limitations are not consistent with the record as a whole, including the claimant's subsequent cervical spine MRI, showing only mild changes, EMG/NCS findings, and her overall conservative treatment of record (Exhibits C10F, C15F, and C16F).

(Admin. Tr. 29-30; Doc. 8-2, pp. 30-31).

After evaluating these statements, along with Plaintiff's statements, and the record as a whole, the ALJ concluded that Plaintiff was capable of a range of "light" work, incorporated postural limitations identical to those in the Park and Wilson opinions, added limitations in reaching and handling like Dr. Park's assessment, and added the environmental limitations assessed by Dr. Park.

As discussed above, like CRNP's opinion, the physical therapist concludes, after having Plaintiff undergo approximately two hours of testing, that Plaintiff would be limited to *sedentary* work and could not work for a full day. The ALJ limited Plaintiff to *light* work based on opinions by two non-examining sources. We find that this FCE is highly relevant to the evaluation of Plaintiff's physical

limitations, and because it supports a greater degree of limitation than the ALJ

assessed, it could have impacted the outcome in this case.

## V.    CONCLUSION

Accordingly, Plaintiff's request for relief is GRANTED as follows:

(1)    The final decision of the Commissioner is VACATED.

(2)    This case is REMANDED to the Commissioner for further proceedings
pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment will be issued in favor of Lusitania Gregorio.

(4)    Appropriate Orders will be issued.

Date: March 31, 2023                         BY THE COURT

                                             *s/William I. Arbuckle*
                                             William I. Arbuckle
                                             U.S. Magistrate Judge